

# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN  DIVISION

| | | |
|---|---|---|
| ROGER CARLISLE | § | |
| | § | |
| V. | § | CASE NO.  4:04CV309 |
| | § | (Judge Schell/Judge Bush) |
| DAVID TRUDEAU, ET AL. | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Roger Carlisle, originally filed this suit in state court alleging that one or more of the Defendants, the City of Murphy, its Mayor, David Trudeau and several council members breached an employment agreement, defamed Carlisle, violated the open meetings act, terminated him for reporting wrongdoing under the Texas Whistleblower Act and violated his right to due process.  Defendants removed the case.

Defendants now seek summary judgment on all claims brought by Carlisle. Having considered the Motion, Response and Reply as well as the voluminous record of exhibits attached to the respective pleadings, the Court finds that the Motion should be denied in part and granted in part.

## Standard

Summary judgment is proper if  "there is no genuine issue as to any material fact and  . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  The trial court must resolve all reasonable doubts in favor of the party opposing the motion.  *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981)(citations omitted).  The party seeking summary judgment carries the burden of demonstrating that there is no actual dispute as to

1

any material fact in the case.  This burden, however, does not require the moving party to produce evidence showing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The moving party satisfies its burden by "pointing out to the district court... that there is an absence of evidence to support the nonmoving party's case."  *Id.*

Once the moving party has satisfied its burden, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).  If the nonmovant fails to set forth specific facts in support of allegations essential to that party's claim and on which that party will bear the burden of proof, then summary judgment will be appropriate.  *Celotex*, 477 U.S. at 323.  Even if the nonmovant brings forth evidence in support of its allegations, summary judgment will be appropriate "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)(citations omitted).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Id.*

## Breach of Contract Claim

The City first claims that Carlisle has no contract with the City since it was never approved by the City Council.  As a general rule, a city may only contract upon express authorization of the city council by vote of that body reflected in the minutes. *City of Bohman v. Sw. Sanitation, Inc.,* 871 S.W.2d 765 (Tex. App.--Texarkana 1994, writ denied).  Under the law, a person's contract with a city may not be worth the paper it is written on unless that person ensures that the contract is properly authorized. *State v. Ragland Clinic-Hospital,* 159 S.W.2d 105, 107 (1942).  However, Carlisle has presented evidence, including the affidavit of the former Mayor, Roy Bentle, as well as that of the former Human Resource Director  that the City entered into a contract with Carlisle at a

special session in September 2002, and that such was approved by the former City Council. Belatedly, the City attached two meeting minutes of regular sessions.  These minutes contain no references to the contract.  However, there is a fact issue as to whether Carlisle's contract was signed in a special session.  Those minutes do reflect two executive sessions in September. It is possible that Ms. Jaynes memory is better than that of the mayor pro tem who was on the council at that time. Carlisle has attached a contract to his response containing the Mayor's signature and seal of the City Secretary.  The contract states that it is with the City of Murphy acting by and through its City Council.   Even if Mayor Bentle signed the contract without proper authority, the City may be estopped from denying its validity if the City accepted performance under the contract and enjoyed the benefits that accrued to it.  *See generally, Panhandle Constr. Co. v. Spearman,* 89 S.W.2d 1053 (Tex. Civ. App. 1935). Having made an agreement and been aware that a contract had been signed by at least two parties, the City's decision to argue invalidity at this late date is troubling.  The Court notes that the Defendants failed to plead illegality or void contract as an affirmative defense. Although Fifth Circuit law allows the Court some latitude in considering defenses not affirmatively pled, the Court has every reason to strike all contractual defenses not properly raised in Murphy's answer. *See generally*, *Allied Chem. Corp. v Mackay,* 695 F.2d 854 (5th Cir. 1983).   Nevertheless, the Court finds that a  fact issue exists on this point.  Undaunted, the City next argues that the contract violates the Texas Constitution in that it creates unfunded debt.  The City takes the position that Carlisle must prove that the City created a sinking fund of at least two percent for the payment of the debt.  Carlisle' s contract provided for payment of $7,000.00 per month plus benefits for a three-year term.  Either party could terminate the contract at any time.  If Carlisle was terminated for any reason other than for just cause, he would be entitled to one half of his then remaining salary for

3

the term of the contract.  Carlisle has only sued for breach under the termination clause.  By contracting with a private party, the City has waived immunity from liability. *See generally, Mokwa v. City of Houston*, 741 S.W.2d 142, 145 (Tex. App.-- Houston [1st Dist.] 1987, writ denied).  In addition, the Legislature has waived the City's immunity from suit. TEX. LOC. GOV'T CODE ANN. § 51.075.  Although the City does not argue that it is immune from suit, several Texas intermediate Courts are split on this issue and the effect of § 51.075.  *See generally, City of Carrollton v. McMahon Contracting L.P.*, 134  S.W.3d 925  (Tex. App.–Dallas, 2004, pet. filed). Since the issue is not raised, the Court assumes that Murphy has enacted language expressly consenting to suit.  In any event, failing to raise this issue as an affirmative defense is tantamount to waiver at this late date. *See* FED. R. CIV. P. 8(c).  Although the contract is an at-will employment agreement, an employer may modify the terms of such an agreement.  This is what Murphy did in the severance provision of the contract.

Carlisle argues that a contract does not create a debt if the parties lawfully and reasonably contemplate that the obligation will be satisfied out of current revenues or out of some fund then within the control of the governing body. *Mun. Admin. Servs., Inc. v. City of Beaumont*, 969 S.W.2d 31 (Tex. App.--Texarkana 1998, no pet.); *McNeil v. City of Waco*, 33 S.W.322, 324 (1895); *City-County Solid Waste Control Bd. v. Capital City Leasing, Inc.*, 813  S.W.2d 705, 7074 (Tex. App.–Austin 1991, writ denied).  According to Carlisle's affidavit, this was done with respect to the payment of the salary under the contract on an annual basis.  Carlisle is not trying to enforce the three-year term of the Contract.  He is only trying to enforce the severance provision of Section 3 of the Contract related to termination with "just cause."  The right of Carlisle to obtain a severance payment is contingent upon his termination, which may or may not ever occur, and thus is not a right

4

for which reserves must be established.   The contract imposes no obligation for continued employment of Carlisle as the City Manager or Administrator.   The only contingency for liability is termination without   just cause.   A pure contingency contract does not violate the Texas Constitution. *Cameron County Water Improvement Dist. v. W. Metal Mfg. Co.*, 125 S.W.2d 650 (Tex. Civ. App.–El Paso 1939)(citing *Corpus Christi v. Woessner*, 58 Tex. 462 (Tex. 1883) and *City of Terrell v. Dissaint*, 9 S.W. 593 (Tex. 1888)).   Carlisle's salary was established on a year-to-year basis and was provided for in his budget.   The severance was a pure contingency if Carlisle was terminated within a particular year and the amount changed as time passed.   It could have never accrued.   Therefore, because of this contingency provision, there is no real debt for which provision must be made.   Therefore, the contingency provision does not violate the Texas Constitution. The Court declines to dismiss Carlisle's breach of contract claim. Carlisle agrees that he has not filed suit for breach as to the individual defendants and therefore only the City has potential liability. As to Carlisle's request for attorney's fees, attorney's fees must be authorized by statute or contract. *Hill v. Heritage Res. Inc.*, 964 S.W.2d 89, 143 (Tex. App.-- El Paso 1997, pet. denied).   Murphy argues there is no contract language authorizing recovery of fees.   The Court agrees.   In addition, Texas Civil Practice and Remedies Code section 38.001 does not apply to municipalities.   *See generally*, *City of Terrell v. McFarland*, 766 S.W.2d 809 (Tex. App.--Dallas 1988, writ denied ).   However, attorney's fees may be properly awarded under 42 U.S.C. § 1983; *Comm'n Workers of Am. v. Ector County Hosp. Dist.*, 392 F.3d 733 (5th Cir. 2004).   Therefore, the Court declines to dismiss Carlisle's request for attorney's fees at this time.

### Open Meetings Act Claims

The gist of Plaintiff's Open Meetings Act claim, which ties into his due process claim,  is that

5

the action of the individual defendants on June 11, 2004 in suspending him, was illegal because Texas Government Code section 551.074 requires any personnel matter to be held in open session when the subject of the action requests an open meeting.  Defendants contend that neither Texas Government Code sections 551.074 nor 551.041 are applicable.  Defendants claim that the Council did not discuss or consider the Plaintiff's job performance evaluation or any action to be taken as a result thereof in executive session and did not take any action in open session as a result of said evaluation.  Defendants allege the Council properly met in executive session pursuant to Texas Government Code section 551.071(b) to consult with its attorney regarding a possible investigation to be conducted pursuant to section 3.17 of the City Charter.  The City does not allege that it met in closed session to discuss pending or current litigation. Carlisle does not argue that the meeting exceeded the scope of permissible council consultation. Therefore, the Court will not address whether, under a literal interpretation of the statute, attorney consultation was permissible as to an "investigation."  When it convened in open session, the Council voted to conduct an investigation involving, among other things, activities of the Plaintiff and, pursuant to the authority granted it in section 2.04 of its Charter, placed Carlisle on administrative leave with pay pending the results of the investigation.

Texas Government Code section 551.074(a) allows an executive session of the council:

(1) to deliberate the appointment, employment, evaluation, reassignment, duties, discipline, or dismissal of a public officer or employee; or (2) to hear a complaint or charge against an officer or employee.

However, the right to conduct a closed session "does not apply if the officer or employee who is the subject of the deliberation or hearing requests a public hearing."  TEX. GOV. CODE ANN. § 551.074(b) (Vernon 2004).

The City Council set an executive session regarding Carlisle for its meeting on June 11, 2004.

The notice of the meeting in the agenda was posted as follows:

> 5. Executive Session.   The City Council will hold a closed Executive Session meeting, pursuant to the provisions of Chapter 551, Texas Government Code, Vernon's Texas Codes Annotated, in accordance with the authority contained in Section 551.071(b).   Consultation with the City Attorney regarding legal issues associated with a possible investigation by the City Council, pursuant to Section 3.17 of the City Charter, regarding the official conduct of City officers and/or employees, and all matters incident and related thereto.
>
> Section 551.074 Consider Job performance evaluations of City Manager and City Secretary.
>
> Section 551.074 Consider actions to be taken by the City Council as a result of consideration of job performance evaluations of City Manager and City Secretary, and all matters incident and related thereto.

Carlisle demanded a public hearing pursuant to section 551.074 of the Act with respect to matters relating to him.  The Council refused and went into closed session for an hour, reconvened, and voted to suspend Carlisle, again without giving any reasons.  Defendants now argue that the purpose of the session was simply to authorize the investigation.  Carlisle argues that the facts do not support this argument and are contradicted by the sworn testimony of Councilman Bogden, who was present in the closed session.  Plaintiff points out that the Council took disciplinary action by suspending him.  Councilman Bogden admitted in his deposition that there were discussions in the closed session about options related to what action would be taken against Carlisle, who would replace him, and the fact that they did not want any interference from Mr. Carlisle during the investigation.  Bogden testified that they discussed putting Carlisle on "paid administrative leave."

There was also a discussion of Mr. Carlisle's replacement if he was placed on administrative leave.  These admissions, coupled with adverse personnel action taken against Carlisle, indicate that

there is a fact issue as to whether the Open Meetings Act was violated.  Although the Council may have had  the right to consult its attorney about pursuing an investigation, it had no right to discuss and take the disciplinary action against Carlisle after he had requested a public  hearing.

### Due Process Claim

The Court finds that there is a fact issue as to whether Carlisle was denied due process. Carlisle has a property interest in his severance payment unless he is terminated for "just cause." In order to establish a claim for denial of procedural due process, a plaintiff must prove that he had a constitutionally protected property or liberty interest that has been infringed by the defendant. *Cleveland Board of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985); *Roth v. Board of Regents*, 408 U.S. 564, 569 (1972).  These property rights can be created by written contract or mutually explicit understandings enforceable under state law as express or implied contracts.  *Johnson v. Sw. Miss. Reg'l Med. Ctr.*, 878 F.2d 856,858 (5th Cir. 1989); *Irby v. Sullivan*, 737 F.2d 1418, 1421 (5th Cir. 1984).  A property interest arises when a contract or understanding limits an entity's power to terminate a Plaintiff but for just cause.  *Henderson v. Sotelo*, 761 F.2d 1093, 1096 (5th Cir. 1985). Since the contract does limit the City's power to terminate Carlisle but for "just cause," as it relates to his right to severance, the contract creates a property interest that Carlisle has a right to enforce.

In essence, Carlisle says he was not given an adequate or fair opportunity to defend himself as to the allegations which led to his termination.  Most of the alleged misconduct concerns the lease of a sports utility vehicle for the City and a $2,000.00 raise for a city employee.  Carlisle has presented sufficient evidence that these were merely trumped-up charges brought by the Mayor and carried out to terminate him. On the other hand, the City argues that it did give him ample opportunity to be heard on the issue and respond in due fashion. Carlisle's version of the events

8

differs from the City's and he claims at best he was given a two page summary of a 156 page preliminary report and his 19 page response was made without full disclosure by the City of what allegations were pending.

The individual defendants have also asserted the defense of qualified immunity to Carlisle's due process claim. The Fifth Circuit in *Holden v. Knight*, 155 F. App'x 735, 738 (5th Cir. 2005) set forth an outline for determining qualified immunity:

> "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 475 U.S. 800, 818 (1982). To defeat qualified immunity, a plaintiff must meet a bifurcated test. The plaintiff must first allege a violation of a clearly established constitutional right. *Wilkerson v. Stalder*, 329 F.3d 431, 434 (5th Cir. 2003). "To be 'clearly established' for purposes of qualified immunity, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Johnson v. Johnson*, 385 F.3d 503, 524 (5th Cir. 2004)(quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). In addition to alleging a violation of a clearly established constitutional right, the plaintiff must also allege facts that show the defendant's conduct was not objectively reasonable in the light of the law established at the time of the incident. *Heitschmidt v. City of Houston*, 161 F.3d 834, 836-37 (5th Cir. 1998). Thus, [a] court must first determine whether Holden's complaint alleges the violation of a clearly established right. *See Wilkerson*, 329 F.3d at 434-35.

Carlisle maintains that he was denied severance and that there was thus a finding of just cause for termination without a full and fair hearing. The Court in *Holden* went on to state:

> "Procedural due process entitles a public employee with a property right in his employment to notice of the charges against the employee, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Fowler v. Smith*, 68 F.3d 124, 127 (5th Cir. 1995). "The essential requirements of procedural due process under the Constitution are notice and an opportunity to respond." *Finch v. Fort Bend Indep. Sch. Dist.*, 333 F.3d 555, 562 (5th Cir. 2003). "The fundamental requirement ... is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)(quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965). Public officials violate substantive due process rights if they act arbitrarily or

9

capriciously."  *Finch*, 333 F.3d at 562-63.

---

> A government  employee alleging a due process claim in connection with an adverse employment action  must also assert a property interest in the employment. *See Cabrol v. Town of Youngsville*, 106 F.3d 101, 105 (5th Cir. 1997) (stating that the Fourteenth Amendment's due process clause did not create a property interest in continued government employment.  The hallmark of a property interest "is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'"  *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982) (quoting *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 11 (1978).  Such an interest does not exist merely because a plaintiff is a public employee, but may be established through operation of federal or state law, contractual obligations, or policy.  *Cabrol*, 106 F.3d at 105.

*Holden*, 155 F. App'x at 739.  As stated previously, Carlisle must point to some contract or understanding that creates the property interest.   Since Carlisle's right to payment of a sum certain was due on termination absent just cause, he has shown such a right.

Having satisfied the first inquiry, the Court must then determine whether the council's action was not objectively reasonable in light of the circumstances.  "Qualified immunity is defeated if an official "'*knew or reasonably should have known* that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], or if he took the action *with the malicious intention* to cause a deprivation of constitutional rights or other injury....'"  *Harlow*, 475 U.S. at 815 (quoting *Wood v. Strickland*, 420 U.S. 308, 322 (1975)).  Here Carlisle demanded an open session. It appears that there is a fact issue as to whether the individual council members should have known that the adverse employment decision possibly arrived at in closed session defeated Carlisle's right to have the matter discussed fully and fairly in open session.  The Court finds that there is a fact issue as to whether the individual defendants are entitled to qualified immunity.  The jury is entitled to hear all sides of this controversy.

10

## **Defamation**

_____Carlisle has also sued for libel and slander.  The City contends that Carlisle is a public figure.

If Carlisle is a public figure, a different standard applies than if he is a private individual.  In order

to maintain a claim of defamation, a public official or public figure must prove: (1) that the

defendant published a statement; (2) that was defamatory concerning the public official or public

figure; and (3) that the false statement was made with actual malice.  *Carr v. Brasher*, 776 S.W.2d

567, 569 (Tex. 1989)(citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964)).  For a

statement to be considered made with actual malice, the statement must be made "with knowledge

that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v.

Sullivan*, 376 U.S. 254, 280 (1964).  Reckless disregard requires a showing of "a high degree of

awareness of probable falsity."  *Carr,* 776 S.W.2d at 571.  To prove reckless disregard, the

defamation plaintiff must present "sufficient evidence to permit the conclusion that the defendant

in fact entertained serious doubts as to the truth of his publication." *Id.*  Actual malice is a stringent

culpability standard which a public figure defamation plaintiff must meet in order to recover.  It is

the defamation plaintiff's burden to come forward with "specific affirmative proof" establishing that

the defendant "entertained serious doubts as to the truth" of the publication.  *Howell v. Hecht*, 821

S.W.2d 627, 631 (Tex. App.--Dallas 1991, writ denied).   A defendant's mere failure to fully

investigate the truth or falsity of a statement before it is published has been held insufficient to show

actual malice.  *Becky v. Lone Star Broad. Co.*, 970 S.W.2d 610, 617 (Tex. App.--Tyler 1998, pet.

filed) (citing *St. Amant v. Thompson*, 390 U.S. 727, 733 (1968).  *See also*, *Galveston Newspapers,

Inc. v. Norris*, 981 S.W.2d 797 (Tex. App-- Houston [1st Dist] 1998, pet. denied).  Whether Carlisle

is a public figure is a question of law for the court.  *See generally, TSM AM-FM TV v. Meca Homes,*

*Inc.,* 969 S.W.2d 448 (Tex. App.--El Paso 1998, pet. denied).

The court finds that Carlisle at the very least is a limited-purpose public figure. *See generally, Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974). In *Trotter v. Jack Anderson Enters., Inc.*, 818 F.2d 431 (5th Cir. 1987), the Fifth Circuit Court of Appeals articulated a three-part test to determine whether a plaintiff in a defamation action is a limited-purpose public figure. First, the controversy at issue must be public both in the sense that people are discussing it and that people other than the immediate participants in the controversy are likely to feel the impact of its resolution. Second, the plaintiff must have more than a trivial or tangential role in the controversy. Third, the alleged defamation must be germane to the plaintiff's participation in the controversy. *Trotter*, 818 F.2d at 433-34.

The Defendants argue that there is no evidence as to actual malice. Although actual malice focuses on the defendant's state of mind, a plaintiff can prove it through objective evidence surrounding the publication's circumstances. *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103 (Tex. 2000). Carlisle argues that the Mayor and one or more council members had information that the preliminary investigation indicated no wrong doing on his part. He also argues that there were numerous instances where articles and emails libeled him. The Court has reviewed all articles attached as well as the affidavit and designated deposition testimony primarily of Trudeau and Bogden in relation to Carlisle' s complaint. The burden is on Carlisle to specifically indicate what statements he contends are defamatory. He has not done so. After reading the above referenced exhibits, the Court finds that summary judgment should be granted for all defendants on Plaintiff's claim for libel. Plaintiff has not shown either sufficient defamatory statements by one or more of the defendants nor has he shown that any statements were published with malice.

## Whistleblower Claim

Plaintiff also makes a claim under the Texas Whistleblower Act.  The Texas Whistleblower Act states that:

> (a) A state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority.

> (b) In this section, a report is made to an appropriate law enforcement authority if the authority is a part of a state or local governmental entity or of the federal government that the employee in good faith believes is authorized to:

>> (1) regulate under or enforce the law alleged to be violated in the report; or

>> (2) investigate or prosecute a violation of criminal law.

TEX. GOV. CODE ANN. § 554.002 (Vernon 2004).  A report is made in good faith if: "(1) the employee believed that the conduct reported was a violation of law and (2) the employee's belief was reasonable in light of the employee's training and experience.  *Wichita County v. Hart*, 917 S.W.2d 779, 784 (Tex. 1986).  An employee must also honestly and reasonably believe he is reporting the violation "to an authority within an entity which could regulate under or enforce the law in issue or prosecute a criminal offense...."  *Tharling v. City of Port Lavaca*, 329 F.3d 422, 429 (5th Cir. 2003) (quoting  *Duvall v. Tex. Dep't of Human Servs.*, 82 S.W.3d 474, 478 (Tex. App.--Austin 2002, no pet.)).

Defendants argue that Plaintiff's Whistleblower claim must fail because there was no violation of the law, because Plaintiff did not report any alleged violation to an appropriate law

13

enforcement authority and because Plaintiff was not terminated for reporting any alleged violation of law. The Court has already found there to be a fact issue as to whether the City's action violated the Open Meetings Act. A violation of the Open Meetings Act is a violation of the law carrying both civil and criminal penalties. *See* TEX. GOV. CODE ANN. § 551.142 (Vernon 2002); *see also Tharling*, 329 F.3d at 429. The Court therefore finds that Plaintiff made a good faith report of what he reasonably believed to be a violation of the law.

The next issue is whether Plaintiff reported the violation to an appropriate law enforcement authority. Defendant claims that neither a City Manager nor a Mayor, as a matter of law, is an appropriate law enforcement authority. Plaintiff, however, contends that he reported the violation to the City Attorney and the City Council when he filed a Petition on June 17, 2004 in Collin County District Court alleging a violation of the Open Meetings Act. The petition was served upon the City Council through the City Attorney, who answered the Petition. The Plaintiff also claims that the petition put the 401st Judicial District of Collin County on notice of the violation. Furthermore, Plaintiff claims that on July 1, 2004, he complained to the City Council and City Attorney in Open Session that the City Council's June 11, 2004 actions violated the Open Meetings Act.

Defendants explicitly state in their Motion for Summary Judgment that "it is undisputed that the City Council, or City Secretary are authorized to enforce or prosecute violations of the Open Meetings Act." (Def. M. Sum. J. at pg. 15, ¶ 76). It appears to the Court, then, that Defendants agree that when Plaintiff notified the City Council of the violation, he notified a proper law enforcement authority. Regardless, even if the City Council, City Attorney, and 401st District Court of Collin County are not appropriate law enforcement authorities, the Court finds a fact issue as to whether Plaintiff reasonably believed them to be.

14

The final issue is whether Plaintiff was terminated because of his report.  The Court finds that Plaintiff has likewise established a fact issue in this regard.  Plaintiff was terminated within 30 days of reporting the alleged violation and Plaintiff has offered evidence that the reasons, if any, offered for his termination were pretextual.  Texas Government Code section 554.004(a) creates a rebuttable presumption that, when an employee is terminated within 90 days of reporting a violation of law, the termination was a result of the report.  *See also Lubbock County v. Strube*, 953 S.W.2d 847, 853 (Tex. App.--Austin 1997, pet. denied).  Furthermore, even if a Plaintiff is terminated outside of the 90 day period, he need not prove that the reporting of protected conduct was the sole reason for his termination, but only that it was one reason for his termination.  *Id.*  The Court finds that the City has not sufficiently overcome the presumption that Plaintiff was terminated for reporting a violation of law. The Court therefore finds that Plaintiff's Whistleblower claim against the City should survive.  However, the Court agrees with Defendants that, to the extent Plaintiff intends to sue any of the individual defendants under the Texas Whistleblower Act, his claim should be dismissed.  *See Rodriguez v. Laredo Indep. Sch. Dist.*, 82 F. Supp. 2d 679, 688 (S.D. Tex. 2000).

## **RECOMMENDATION**

Based upon the foregoing, the Court RECOMMENDS that Defendant's Motion for Summary Judgment be GRANTED as to Plaintiff's claim for Defamation and his claim against the individual defendants for violation of the Texas Whistleblower Act and breach of contract.  The Court RECOMMENDS that in all other respects Defendant's Motion for Summary Judgment be DENIED.

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge.  28 U.S.C.A.

15

§ 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice.  *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 13th day of March, 2006.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE

16